A09A1315. FOSTER v. THE STATE.
(685 SE2d 422)

BARNES, Judge.
Germichael Foster appeals his conviction for cocaine trafficking, contending that the trial court erred by denying his motion for a directed verdict of acquittal because the State's evidence was insufficient. He also asserts his trial counsel was ineffective. Because the

State's evidence was insufficient for a rational trier of fact to find Foster guilty beyond a reasonable doubt of cocaine trafficking, we reverse. *Jackson v. Virginia*, 443 U. S. 307 (99 SC 2781, 61 LE2d 560) (1979).

1. On appeals from criminal convictions, the appellate court views the evidence in the light most favorable to the verdict. *Hall v. State*, 283 Ga. App. 266, 267 (641 SE2d 264) (2007). We no longer presume the defendant is innocent, nor do we weigh the evidence or decide the witnesses' credibility, but only determine if the evidence is sufficient to sustain the convictions. *Campbell v. State*, 278 Ga. 839, 840 (1) (607 SE2d 565) (2005).

Viewed in that light, the evidence at trial established that late on December 9, 2006 a sheriff's deputy was directing traffic around an unrelated accident when a white Cadillac ignored his signals to stop. The deputy followed in his squad car and stopped the Cadillac. He asked for identification from both the passenger and the driver, who was Christopher Lee Woods. The passenger, whom the deputy later identified as Foster, did not have a driver's license but gave the deputy his name, date of birth, and social security number. The deputy said the men were "kind of stiff-necked and kind of laid back," and noted that Foster only looked at him when he was being addressed. When asked who was more tense, Foster or the driver, the deputy said, "As far as tense, not moving around, the passenger wasn't near as loose as the driver." The deputy walked back to his patrol car to reactivate his lights and saw Woods and Foster "associating back and forth. A lot of movement seems like it was going around," and then "the car took off."

The deputy chased the car across the state line into Alabama at speeds sometimes exceeding 100 miles per hour. Woods drove into a residential area and eventually ran into a ditch and hit a telephone pole. He and Foster ran from the car in the same general direction, and the deputy pursued them on foot up to the tree line, where he abandoned the chase. Presumably Woods and Foster were eventually arrested based on the information they gave the deputy when he first stopped the car.

After towing the vehicle back to Georgia, an inventory search uncovered a plastic bag containing almost two kilograms of cocaine in the very back of the trunk under a pile of clothing. No drugs were found in the vehicle's interior. Both Woods and Foster were indicted for cocaine trafficking, and Woods pled guilty to trafficking hours before Foster's trial began. Woods was sentenced to serve 15 years.

The deputy did not know if the clothing in the trunk belonged to Woods or Foster, and confessed that he "messed up" by failing to process the bag containing the drugs for fingerprints or other evidence. He agreed that Woods, as the driver, was in control of the

car. When asked what connected Foster to the cocaine in the trunk, he replied, "I probably couldn't give a straightforward answer on that. . . . Other than him identifying his self [sic] being in the car and then fleeing from the car, I don't recall getting no fingerprints [sic] from him being in the car."

A deputy sheriff with the West Georgia Drug Task Force testified that he was called to the scene after the cocaine was uncovered. When he arrived the doors and trunk were open and the car was "really in a disarray." He testified that a kilo of cocaine was worth $21,000, and after it was cut into smaller portions and diluted, its eventual street worth was about $100,000 per kilo. When asked what evidence linked Foster to the cocaine found in the trunk, the investigator replied, "I don't have anything."

Foster's brother owned the car in which the cocaine was found, and the State called him as a witness, apparently to establish that the brother lied to the police about his car having been stolen around the time of the chase. Foster's brother testified that his car ran out of gas one morning around the time of the chase, although he could not be sure of the exact date. When he returned to retrieve his car from the parking lot later that afternoon, it had been stolen, he said, so he reported it to the police. He found out three or four days later that Woods had his car, which had been in a "drug chase." The clothes found in the trunk were probably his, but the drugs were not. The brother also testified that he and Foster had relatives living in the neighborhood where the car was abandoned, and that he, Foster, and a third man were members of a band. An Alabama police officer testified that on December 10, 2006, Foster's brother reported that he had left his car overnight after it ran out of gas and when he came back for it the next day it had been stolen.

Foster argues on appeal that this evidence is insufficient to sustain his conviction, and also contends that his trial counsel was ineffective for failing to move to suppress the deputy's identification of him as the passenger. He posits that it could have been his brother who was the passenger in the car and who gave the deputy Foster's name, birth date, and social security number. Further, he argues, the deputy only had a few seconds to look at the passenger's face and therefore his in-court identification was "unreliable." The deputy never selected him from a photographic lineup and did not testify about the passenger's weight, height, age, complexion, or any other physical details other than him having long fingernails.

The State responds that the deputy testified that he had a good look at the passenger when he stopped the vehicle, and identified Foster as that passenger. The state argues that that identification in addition to the following evidence was sufficient to affirm Foster's cocaine trafficking conviction: Woods, Foster, and Foster's brother

were members of a band; Foster was in his brother's car, which he had driven before, on a route commonly traveled between Atlanta and Roanoke, Alabama; Foster seemed nervous when the deputy pulled the car over and only looked at the deputy when spoken to; the car was abandoned with the keys in the ignition in an area where Foster has family; and Foster ran from the scene in the same general direction as the driver. Although the State argues in its brief that Woods did not claim the drugs or exculpate Foster when he pleaded guilty to trafficking, those facts are not in evidence and cannot be considered. *Brumelow v. State*, 239 Ga. App. 119, 120 (1) (520 SE2d 776) (1999).

The driver of a vehicle is presumed to have exclusive possession of contraband substances found in the vehicle. *Turner v. State*, 277 Ga. App. 205, 206 (1) (626 SE2d 176) (2006). While the presumption that the driver possessed the drugs is rebuttable by evidence that others had equal access to the contraband, Foster did not own, drive, or otherwise "possess" the car, so that presumption never even arose in the first place. *Washington v. State*, 253 Ga. App. 611, 614 (1) (560 SE2d 80) (2002).

The evidence of Foster's guilt is all circumstantial, and therefore must exclude every other reasonable hypothesis other than Foster's guilt. "There is no direct evidence that he had any control (possession) or even knowledge (constructive possession) of the contraband. The only direct evidence was that he looked nervous, was present when another committed a crime, and fled from the police." *Denham v. State*, 144 Ga. App. 373, 374 (1) (241 SE2d 295) (1977).

The other factors argued by the State — that Woods and Foster were in the same band, that Woods ditched the car in a neighborhood where Foster had family, and that they ran in the same general direction — are not even circumstantial evidence of a crime, and are "insufficient to authorize a rational trier of fact to find that [Foster] was in constructive possession of the cocaine beyond a reasonable doubt and to the exclusion of every other reasonable hypothesis." *Mitchell v. State*, 268 Ga. 592, 593 (492 SE2d 204) (1997). See also *Gillis v. State*, 285 Ga. App. 199 (645 SE2d 674) (2007); *Hodges v. State*, 277 Ga. App. 174 (626 SE2d 133) (2006); *Hughes v. State*, 215 Ga. App. 6, 8-9 (1) (449 SE2d 547) (1994).

2. Based on our holding in Division 1, Foster's remaining enumeration of error is moot.

*Judgment reversed. Miller, C. J., and Andrews, P. J., concur.*

DECIDED OCTOBER 13, 2009 

*Leah D. Madden*, for appellant.
*Peter J. Skandalakis*, District Attorney, *Sarahlouise S. Japour*,

*John B. Cunningham, Timothy M. Marlowe, Assistant District Attorneys*, for appellee.